UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                   )
SOLOMON ROSS,                      )
                                   )
            Plaintiff,             )
                                   )
      v.                           )   Civil Action No. 02-553  (RBW)
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of Social Security,   )
                                   )
            Defendant.             )
_____)

**MEMORANDUM OPINION**

Solomon Ross, the plaintiff in this civil lawsuit, seeks a judgment reversing the denial of his application for social security disability insurance benefits and supplemental security income benefits by the Social Security Administration (the "Administration").[1] Complaint ¶ 4. Currently before the Court is the plaintiff's motion for a judgment of reversal or remand and the defendant's motion for a judgment of affirmance, which were filed pursuant to 42 U.S.C. § 405(g). After carefully considering the plaintiff's complaint, the administrative record, the parties' motions, and all memoranda of law and exhibits relating to those motions,[2] the Court concludes that it must grant the plaintiff's motion, deny the defendant's motion, and remand this case to the Administration with instructions for the reasons that follow.

---

[1] The plaintiff's complaint names Jo Anne B. Barnhardt, the former Commissioner of Social Security, as the sole defendant in this case in her official capacity. The Court has substituted the current Commissioner, Michael J. Astrue, as the defendant in place of former Commissioner Barnhardt pursuant to Federal Rule of Civil Procedure 25(d).

[2] In addition to the plaintiff's complaint and the parties' cross-motions for judgment, the Court considered the following documents in reaching its decision: (1) the Memorandum in Support of Plaintiff's Motion for Judgment of Reversal (the "Pl.'s Mem."), (2) the Memorandum of Points and Authorities in Support of Defendant's Motion for Judgment of Affirmance and in Opposition to Plaintiff's Motion for Judgment of Reversal (the "Def.'s Mem."), and (3) the Plaintiff's Response to Defendant's Motion for Judgment of Affirmance (the "Pl.'s Response").

### I.  Background

Except where otherwise noted, the following facts are part of the administrative record submitted to the Court.  The plaintiff, a carpenter by trade, Administrative Record (the "A.R.") at 55, 59, 135–36, filed an application for disability insurance benefits and supplemental security income benefits on July 8, 1998, based on his alleged inability to work since injuring his right leg in January of 1989, id. at 12.  According to the plaintiff, he was diagnosed with patellofemoral arthritis at that time, which required knee surgery.  Pl.'s Mem. at 2.  He alleges that since his injury, he continues to live with "chronic pain, crepitation, decreased range of motion, atrophy, and join line tenderness."  Id.

The Administration denied the plaintiff's application on August 27, 1998, id. at 1, and affirmed its decision on reconsideration, id. at 2.  The plaintiff then sought a hearing for the review of his application.  Id.  This request was granted, and on July 18, 2000, the plaintiff attended a hearing before an administrative law judge (the "ALJ").  Id.

At the hearing before the ALJ, the plaintiff presented evidence in the form of medical advice from four doctors, who generally agreed that, as a result of his injury, the plaintiff suffered from patellar femoral degeneration and pain in his right knee.  A.R. at 14.  However, the doctors did not discover any visual abnormalities, and the x-ray images did not reveal any "problem with the undersurface of [the plaintiff's] patella."  Id. at 76.  The doctors also concluded that some of the plaintiff's symptoms were "voluntary," and that his condition would not improve unless he developed a "more positive attitude."  Id.  A vocational expert also testified as to the availability of employment in the national economy for a hypothetical

individual with the same education, physical impairments, and labor skills as the plaintiff.  Id. at 18–19.

Following the hearing, the ALJ ruled against the plaintiff, finding that, although the plaintiff had not engaged in substantial gainful activity since January 27, 1989, and the condition of the plaintiff's right knee qualified as a "severe impairment," this impairment did not meet or equal a listing in the Appendix of disabling medical conditions maintained by the Administration.  Id. at 19-20.  Further, the ALJ concluded that the plaintiff's residual functional capacity allowed him to engage in a limited range of medium work, and that, as a consequence, the plaintiff did not meet the statutory definition of "disabled" based upon the range of employment options available to him under the relevant Medical-Vocational Guidelines.  Id. at 21.  The ALJ also denied the plaintiff's application for disability insurance benefits because the disability did not exist, in his opinion, "on or before the date [the plaintiff's] insured status expired."  Id. at 20.

In light of the ALJ's decision, the plaintiff sought to appeal the denial of his claim to the Social Security Administration Appeals Council (the "Appeals Council").  Id. at 118.  The Appeals Council denied his request on February 22, 2002.  Id. at 4-5.  Thereafter, the plaintiff filed his complaint in this Court.

The plaintiff filed his motion for judgment of reversal or remand on August 20, 2002.  In support of that motion, the plaintiff argues that the ALJ erred in performing the fifth step of the five-step evaluation process set forth by 20 C.F.R. §§ 404.1520(a) and 416.920, which requires the ALJ to determine whether a claimant is capable of performing "other work" notwithstanding his impairment, Pl.'s Mem. at 7; see also 20 C.F.R. § 404.1520(g) (setting forth this requirement), id. § 416.920(g) (same).  Specifically, he asserts that the ALJ (1) relied upon

3

certain testimony by the vocational expert that conflicted with the applicable Medical-Vocational Guidelines governing the expert's findings, Pl.'s Mem. at 7–9, and the Dictionary of Occupational Titles, id. at 9, (2) failed to assess the plaintiff's residual functional capacity in the manner prescribed by the Administration, id. at 11–13, or "provide any rationale for failing to find some restriction upon [the p]laintiff's abilities to walk or stand," id. at 11, and (3) erred in finding that the plaintiff's testimony regarding the subjective degree of pain that he suffered was incredible, id. at 13–16.

In response to the plaintiff's motion for a judgment of reversal or remand, the defendant filed a cross-motion for judgment of affirmance on September 30, 2002.[3]  In support of his cross-motion, the defendant argues that (1) the testimony of the vocational expert relied upon by the ALJ did not contradict the applicable Medical-Vocational Guidelines considering the age of the plaintiff when his disability insurance expired, Def.'s Mem. at 11–12, and any contradiction between the vocational expert's testimony and the Dictionary of Occupational Titles was "harmless error," id. at 16–17, and (2) the ALJ's findings regarding the plaintiff's residual functional capacity "finds ample support in the medical evidence of record, as well as in [the] plaintiff's own testimony," id. at 12.  The defendant does not address the plaintiff's argument regarding the ALJ's credibility determination of the plaintiff.  See id. at 11–17 (arguing only that the ALJ properly relied upon the vocational expert's testimony and that there is substantial support in the record for the ALJ's findings regarding the plaintiff's residual functional capacity).  In response to the defendant's cross-motion, the plaintiff reiterates his prior

---

[3] The parties' motions have languished on the Court's docket due to an error in the electronic record-keeping system used by the Court, which did not advise the undersigned member of the Court of the pendency of the motion.  The Court regrets any inconvenience caused to the parties by its delay in addressing their motions.

4

arguments regarding the vocational expert's testimony and the ALJ's findings with respect to the plaintiff's residual functional capacity.  Pl.'s Response at 1–7.

## II.  Standard of Review

As noted above, both parties seek relief pursuant to 42 U.S.C. § 405(g).  Under that statute, a court reviewing a benefits determination by the Administration is "confined to determining whether the [Administration's] decision . . . [was] supported by substantial evidence in the record."  Brown v. Bowen, 794 F.2d 703, 705 (D.C. Cir. 1986).  With respect to the Administration's factual determinations, the "substantial evidence" requirement mandates that the Administration's findings be supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citation and quotation marks omitted).  The standard requires "more than a scintilla, but . . . something less than a preponderance of the evidence."  Evans Fin. Corp. v. Director, 161 F.3d 30, 34 (D.C. Cir. 1998).

With respect to the Administration's legal rulings, "the [district] court shall review only the question of conformity" by the Administration to its own regulations as well as "the validity of such regulations."  42 U.S.C. § 405(g).  Thus, the reviewing court must uphold the Administration's legal "determination if it . . . is not tainted by an error of law."  Smith v. Bowen, 826 F.2d 1120, 1121 (D.C. Cir. 1987).  However, a court may only consider the grounds proffered by the agency in its decision; post hoc rationalizations will not suffice.  Butler v. Barnhart, 353 F.3d 992, 1003 n.5 (D.C. Cir. 2004).

## III. Legal Analysis

Because the plaintiff concedes that "as of [his] date-last-insured, [he] was not disabled," Pl.'s Response at 2, and because disability insurance benefits require a claimant to be disabled as

5

of his date last insured, 42 U.S.C. § 423(a)(1)(A) (2006), the Court need not consider the merits of the plaintiff's request for a judgment of reversal insofar as his disability insurance benefits are concerned. Rather, the only issue before the Court is the propriety of the ALJ's ruling regarding the plaintiff's claim for supplemental security income benefits. To qualify for supplemental security income benefits, 42 U.S.C. § 1382 requires a claimant to establish that he qualifies as "disabled" within the meaning of 42 U.S.C. § 1382c. Pursuant to 42 U.S.C. § 1382c(a)(3)(A), "an individual shall be considered to be disabled . . . if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."

To evaluate whether an individual possesses an "inability to engage in any substantial gainful activity," 42 U.S.C. § 416(i)(1), and therefore qualifies as disabled, the Administration applies a five-step sequential evaluation, 20 C.F.R. § 416.920(a). Under this analysis, the claimant must first show that he is not presently engaged in "substantial gainful activity." Id. § 416.920(b). Second, the claimant must have a "severe impairment" that "specifically limits [his] . . . ability to do basic work activities." Id. § 416.920(c). If the ALJ finds the impairment to be severe, then he should determine whether the claimant's condition "meets or equals" an impairment listed as disabling in the regulations. Id. § 416.920(d). When such a correlation cannot be found, the claimant must demonstrate his inability to perform his past relevant work. Id. § 416.920(e).

Once the claimant makes this showing, the burden shifts in step five of the analysis to the Administration to demonstrate that the claimant can do "other work" considering his age, education, past work experience, and residual functional capacity. Id. § 416.920(g). The Administration may rely upon the Medical-Vocational Guidelines to demonstrate the claimant's

ability to find alternative employment, thereby proving that the claimant does not qualify as disabled.  Smalls v. Shalala, 996 F.2d 413, 416 (D.C. Cir. 1993).

Based upon the positions taken by the parties in their memoranda of law, the only issue before the Court is whether the ALJ correctly performed the fifth step in this sequential analysis; i.e., whether the ALJ committed an error of law or made factual findings without substantial support in the record in determining that the plaintiff could perform "other work" and therefore did not qualify as disabled within the meaning of 42 U.S.C. § 1382c(a)(3)(B).

Given the defendant's failure to refute the plaintiff's argument regarding the deficiencies in the ALJ's decision not to fully credit the plaintiff's testimony as to the subjective intensity of his pain, the Court could reverse and remand the case for that reason alone.  Nevertheless, the Court will consider the propriety of the plaintiff's remaining arguments to clarify the Administration's obligations on remand by this Court.  As set forth in greater detail below, the Court concludes that the ALJ erred both in determining the plaintiff's residual functional capacity and in measuring the plaintiff's age for purposes of the Medical-Vocational Guidelines.  The Court will therefore remand this case to the Administration with instructions to repeat step five of the sequential process outlined above in its entirety.

A.   The Plaintiff's Residual Functional Capacity

Before engaging in steps four and five of the five-step sequential evaluation, the ALJ must determine the claimant's residual functional capacity.  Butler, 353 F.3d at 1000.  This capacity reflects "what an individual can still do despite his or her limitations."  SSR 96-8p, Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *2 (S.S.A. July 2, 1996) (the "S.S.A. Ruling").  Under 42 U.S.C. § 405(g), the Administration must comply with the process set forth in the SSR 96-8p.  See Butler, 353 F.3d at 1000–02 (finding reversible error

in ALJ's conclusions where the ALJ did not, inter alia, make the determinations required by the SSR 96-8p). The S.S.A. Ruling requires that the ALJ assess an individual's ability to perform sustained "work-related physical and mental activities," SSR 96-8p, 1996 WL 374184, at *2, by examining his exertional and non-exertional capacities, id. at *5. The exertional capacities that must be evaluated for possible limitations include the seven strength demands of "[s]itting, standing, walking, lifting, carrying, pushing, and pulling." Id.

When the ALJ arrives at a conclusion regarding these strength functions that contradicts some part of the evidence on the record, the ALJ must explain his rationale, for "[t]he judiciary can scarcely perform its assigned review function . . . without some indication . . . [as to] whether [the] evidence was rejected rather than simply ignored." Brown v. Bowen, 794 F.2d 703, 708 (D.C. Cir. 1986). For example, in Butler the ALJ indicated that the claimant's residual functional capacity would allow her "to perform sedentary work so long as she [could] sit or stand at her own option" and was not required to "lift[] more than four pounds." Butler, 353 F.3d at 998 (internal citation and quotation marks omitted). The District of Columbia Circuit remanded this decision, however, because the ALJ failed to address the medical evidence of record that contradicted his findings, including a doctor's opinion explaining "that [the plaintiff] could not lift, reach[,] or stoop," id. at 1001, and "could not perform work that required any lifting," id. at 1002 (emphasis in original).

In the present case, the ALJ determined that the plaintiff's residual functional capacity allowed him to "perform less than a full range of medium work," with limitations on his ability to "push/pull[,] . . . climb[,] . . . balance, bend, stoop, kneel, crouch, squat[,] . . . crawl[,] [and] climb." A.R. at 20. As the plaintiff correctly points out, the ALJ failed to make any finding with respect to whether the plaintiff suffered from any "restriction upon [his] ability to walk or stand,"

Pl.'s Mem. at 11, two of the exertional capacities that must be assessed under the SSR 96-8p, 1996 WL 374184, at *5.

By placing the plaintiff in the medium work category—which "requires standing or walking, off and on, for a total of approximately six hours in an eight hour workday," SSR 83-10, <u>Determining Capability to do Other Work—The Medical Vocational Rules of Appendix 2</u>, 1983 WL 31251, at *6 (S.S.A. 1983)—without making an exception regarding the plaintiff's walking and standing abilities or explaining why the medical evidence suggesting limitations on those functions should be disregarded, the ALJ arrived at a conclusion contrary to part of the medical evidence in the record without providing a rationale for rejecting this evidence. His conclusion must therefore be rejected under the reasoning of <u>Brown</u>.

The Administration suggests that "ample support [for the ALJ's findings exists] in the medical evidence of record [and] . . . in [the] plaintiff's own testimony." Def.'s Mem at 12. In particular, the Administration points to the plaintiff's testimony that he possesses the ability to stand for approximately "15 [to] 20 minutes" and "walk[] up the 20 stairs to his apartment about 4 times a day . . . [and] five blocks to the office after parking the car." <u>Id.</u> (citing A.R. at 133, 141). But the function of this Court is to review the determinations actually made by the ALJ, not to engage in these determinations for him. <u>SEC v. Chenery Corp.</u>, 332 U.S. 194, 196 (1947) (holding that a reviewing court "must judge the propriety of [an agency's judgment] solely by the grounds invoked by the agency"). And without further explanation from the ALJ, this Court cannot "perform its assigned review function . . . [to ensure that the medical evidence contradicting the ALJ's conclusion] was rejected rather than simply ignored." <u>Brown</u>, 794 F.2d at 708. Therefore, the Court must reverse and remand this case to the Administration so that the

9

ALJ can address the evidence in the record suggesting a possible limitation on the plaintiff's ability to walk and stand.[4]

B.      Applicable Medical-Vocational Guidelines

The defendant argues in the alternative that even if the ALJ erred in determining that the plaintiff was capable of performing a limited range of medium work, this error was harmless because the application of the light and sedentary work categories within the Medical-Vocational Guidelines still results in a finding of "not disabled" based on the plaintiff's age when his insured status expired. Def.'s Mem. at 11; see also 20 C.F.R., Part 404, Subpart P, Appendix 2 §§ 201.19, 202.18 (indicating that a younger individual with at least a limited education and who can perform sedentary or light work does not qualify as disabled).[5] But as the plaintiff accurately points out, assuming he was able to perform light or sedentary work, he would have qualified as disabled had the ALJ accurately classified him as a person of advanced age when the hearing was conducted. See 20 C.F.R., Part 404, Subpart P, Appendix 2 § 201.02 (indicating that an individual at an advanced age who can perform light or sedentary work, but has a limited education and non-transferable work skills, qualifies as disabled); id. § 202.02 (same). Instead,

---

[4] Because the Court concludes that it must remand this case to the Administration for a new inquiry by an ALJ into the plaintiff's residual functional capacity, the Court need not consider whether the ALJ committed a separate reversible error by failing to provide a narrative for his function-by-function assessment that specifically considered each of the seven strength functions. See Pl.'s Mem. at 11 (arguing that the ALJ's failure to provide this narrative "violate[s] the express terms of Social Security Ruling 96-8p"). The ALJ assigned this case on remand may find it advisable to perform such an analysis given the split among members of this Court as to whether such a narrative is necessary. Compare Lane-Rauth v. Barnhart, 437 F. Supp. 2d 63, 68 (D.D.C. 2006) (Urbina, J.) (requiring a function-by-function analysis), with Banks v. Astrue, 537 F. Supp. 2d 75, 84 (D.D.C. 2008) (Leon, J.) (finding this analysis unnecessary). But this member of the Court will not opine on the necessity of such an analysis unless and until a ruling on the issue is unavoidable.

[5] The Medical-Vocational Guidelines are a set of guidelines promulgated by the Administration to evaluate whether a claimant qualifies as disabled based upon the claimant's residual functioning capacity, age, education, and work experience, and the availability of alternative work in the national economy. Smalls v. Shalala, 996 F.2d 413, 416 (D.C. Cir. 1993). For purposes of this evaluation, an individual will be placed into one of three possible categories based on age: a younger person (under the age of 50), 20 C.F.R. § 404.1563(c), a person approaching advanced age (between the ages of 50–54), id. § 404.1563(d), and a person at an advanced age (age 55 or older), id. § 404.1563(e).

the ALJ used the plaintiff's age as of the time when his insured status expired, thereby classifying him as a younger individual and finding him not disabled.  A.R. at 21.

This approach was in error.  The date of an individual's lapse of insured status does not relate to the supplemental security income benefits evaluation, but instead only bears significance for purposes of determining eligibility for disability insurance benefits.  Compare 20 C.F.R. § 404.131 (setting forth the requirements for disability insurance benefits, which includes considering the claimant's insured status), with id. § 416.202 (setting forth the requirements for supplemental security income benefits without making any reference to the claimant's insured status).  As such, the plaintiff's age for purposes of his supplemental security income benefits should have been assessed as of the time when he appeared before the ALJ.  See, e.g., Steed v. Astrue, 524 F.3d 872, 874 (8th Cir. 2008) (using the claimant's age "[a]t the time of her [ALJ] hearing" in adjudicating benefits claim in which both "social security disability and supplemental security benefits" were sought); Crawford v. Bernhardt, 556 F. Supp. 2d 49, 51–53 (D.D.C. 2008) (considering the claimant's age in adjudicating claim to recover supplemental security income based "on the date of the ALJ's decision").

Therefore, for purposes of evaluating eligibility for supplemental security income benefits, the plaintiff's age must be measured at the time of his hearing, and not at the point when his insured status expired.  Accordingly, this Court cannot overlook the ALJ's residual functional capacity analysis as harmless error because, assuming that the plaintiff could only perform light or sedentary work as he asserts, the ALJ would have arrived at a result of "disabled" had he used the plaintiff's age at the time of his hearing.  The Court will therefore remand the Administration's ruling with the instruction that the ALJ use the plaintiff's age at the

11

time of his July 18, 2000 hearing in determining whether the plaintiff qualifies as "disabled" under 42 U.S.C. § 1382c.

### IV. Conclusion

"Although [the Court] must carefully scrutinize the entire record," its role is "not to determine . . . whether [the plaintiff] is disabled;" rather, its responsibility is to determine "whether the ALJ's finding that []he is not is based on substantial evidence and a correct application of the law." Butler, 353 F.3d at 999. In this case, the decision reached by the ALJ cannot survive the Court's review. Because the ALJ did not articulate an adequate basis for reaching his conclusions with respect to the plaintiff's residual functional capacity, the Court will grant the plaintiff's motion for a judgment of reversal with respect to his supplemental security income benefits claim and remand this case to the Administration for further proceedings consistent with this memorandum opinion.

**SO ORDERED** this 24th day of July, 2009.[6]

REGGIE B. WALTON
United States District Judge

---

[6] An order will be entered contemporaneously with this memorandum opinion (1) granting in part and denying in part the plaintiff's motion for judgment of reversal or remand and denying the defendant's motion for judgment of affirmance, (2) reversing the Administration's denial of the plaintiff's claim for supplemental security income benefits, (3) remanding this case to the Administration with instructions, and (4) closing the docket for this case.